1

2                 IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF MISSOURI
3                         WESTERN DIVISION

4   UNITED STATES OF AMERICA,    ) Case No. 08-00113-01-CR-W-NKL
                                 )
5            Plaintiff,          ) Kansas City, Missouri
                                 ) February 11, 2009
6   v.                           )
                                 )
7   TODD BARKAU,                 )
                                 )
8            Defendant.          )
    _____ )

9

10            TRANSCRIPT OF HEARING ON MOTION TO SEVER
               BEFORE THE HONORABLE SARAH W. HAYS
11                UNITED STATES MAGISTRATE JUDGE

12
    APPEARANCES:
13
    For the Plaintiff:          Cynthia L. Cordes, Esq.
14                              AUSA
                                400 E. 9th Street, Ste. 5510
15                              Kansas City, MO 64106
                                (816) 426-3122
16
    For the Defendant:          Lance D. Sandage, Esq.
17                              4700 Belleview Ave, Ste. 404
                                Kansas City, MO  64112
18                              (816) 753-0800

19  Court Audio Operator:       Ms. Georgia Kee

20  Transcribed by:             Rapid Transcript
                                Lissa C. Whittaker
21                              1001 West 65th Street
                                Kansas City, MO  64113
22                              (816) 822-3653

23  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.
24

25

1                   (Court in Session at 1:33 p.m.)

2         THE COURT:  All right.  Good afternoon.  We're here on

3 the case of *United States vs. Todd Barkau*, Case No. 08-113.  If

4 counsel would state their appearance.

5         MS. CORDES:  Cynthia Cordes for the United States.

6         MR. SANDAGE:  Good afternoon.  Lance Sandage on behalf

7 of Todd Barkau who appears in person.

8         THE COURT:  We're here today for a hearing on the Motion

9 to Sever.  Is everyone ready to proceed?

10         MS. CORDES:  Yes, Your Honor.

11         MR. SANDAGE:  Yes, Your Honor.

12         THE COURT:  And do you have evidence to offer?

13         MR. SANDAGE:  No evidence.

14         THE COURT:  Just argument?

15         MR. SANDAGE:  Yes, Your Honor.

16         THE COURT:  All right.

17         MR. SANDAGE:  Me first, I guess, Your Honor.

18         THE COURT:  Sure.  It's your motion.  We'll let you of

19 first.

20         MR. SANDAGE:  Judge, -- excuse me -- I'm the first one

21 to acknowledge, through of my years of practice down here, that

22 severance is little, if ever, granted.  The only other time I've

23 ever had a severance motion granted was in a case not too

24 dissimilar to this in the fact that it was two co-defendants in a

25 non-conspiracy type case.  Though this case is indicted as aiding

1  and abetting, it's certainly not a conspiracy case.  The motion
2  does touch on most of the issues that I think are important.  But
3  I wanted to expand on some things.  I just see no way that the
4  Government's statement, the statements that they got from Debra
5  Palmer, which is the co-defendant in this case, can come into
6  evidence in the case where my client was sitting at the table.
7  In the Government's response to Mr. Barkau's Motion to Sever, the
8  Government and in subsection (c) of that motion attempts to lay
9  out a reason why those issues that are highlighted in blue in her
10 Attachments "A" and "B" would not be violated by *Bruton* because
11 she says that they don't constitute hearsay.  She relies on, the
12 Government relies on a case of *Tennessee vs. Street*.  I think
13 that the legal analysis in subsection (c) is misplaced, Your
14 Honor.  *Tennessee vs. Street* is a discussion in where, actually
15 the defendant testified at trial and was arguing the theory that
16 the Government had coerced or entrapped him into a confession.
17 And so, in rebuttal to that the Government called a sheriff that
18 read into the record the confession of the co-defendant or an
19 accomplice, and that did not really go to the truth of the
20 matter.  It was really to rebut the defendant's theory that the
21 -- that it had be coerced or forced.  That really has no logical
22 relationship to what we have here.  Here we have two defendants
23 in a criminal matter, a confession that was elicited by the
24 Government law enforcement agents in which Defendant Palmer makes
25 several incriminating statements.  And clearly, if she's a co-

1  defendant at our trial, she has the right to remain silent, in

2  which case, Mr. Barkau has no ability to cross-examine her.

3  Therefore, I believe that the confrontation clause would be

4  violated and I think that this line of argument is more closely

5  placed in what I discussed about in our motion, which is how do

6  we apply *Bruton* to it, and can *Bruton* clear these issues up.  I

7  don't think that can happen in this case, Judge.  There's only

8  two defendants.  So, any -- a lot of times when I see the

9  Government propose redactions or changes like this they'll say

10  that Defendant Palmer and he or Defendant Palmer and the other

11  person --

12          THE COURT:  And another person.  I've seen that, yeah.

13          MR. SANDAGE:  It just -- it can't work here.  There's

14  all of -- well, the majority of the illegal conduct that I

15  believe the Government is going to try to elicit at trial all

16  happened in the residence in which Defendant Barkau, Defendant

17  Palmer and the victim all resided.  There aren't any other people

18  that are living there that we could maybe possibly include in

19  this other person.  So, when you use the word "other person,"

20  you're certainly going to cast it to only one person, and that's

21  Defendant Barkau.  In addition, I think that there are some

22  concerns about spill-over effect.  Honestly, probably more

23  related to Defendant Palmer because we have more counts in the

24  Indictment than Defendant Palmer does.  But in any event, I still

25  think that there's an argument to be made as follows:  Defendant

1  Palmer is the mother of the victim.  That will certainly come out

2  at trial.  I could see jurors potentially holding Defendant

3  Barkau somehow responsible for Defendant Palmer's conduct because

4  they're just flat out upset that a mother would allow a daughter

5  to be victimized, as the Government alleges.  There's really no

6  way for us to combat that.  I think it's a fairly significant

7  spill-over, that type of legal analysis, and I think it's a fair

8  interpretation how a jury would react to such evidence as it's

9  presented in, as it comes in.  It's just one of these unusual

10  circumstances, Judge, where I just don't see any way that if the

11  Government feels -- well, I would like severance regardless.  But

12  if the Government is -- feels compelled to go forward and elicit

13  Defendant Palmer's statement at trial and read it into evidence,

14  one, I have a right to have the entire confession read into

15  evidence and so I -- or at least Defendant Barkau does.  I think

16  that the Government has to have a way to redact this and present

17  this in a fair and impartial manner that doesn't cast doubt on

18  Defendant Barkau, since we can't cross-examine.  In addition, I

19  just don't see how a limiting instruction, which is sometimes

20  dovetailed into a *Bruton*ized redaction will anyhow immunize this

21  statement being anything more than incriminating against

22  Defendant Barkau and affecting his constitutional rights.

23          THE COURT:  Let me ask this before you get started

24  because I may have to have you -- not for today but for purposes

25  of ruling on this -- provide some additional information.  The

1  Attachments "A" and "B" to the Government's response would appear

2  to be highlighted in two different colors, but it's really kind

3  of hard to tell, and I can't really tell what's yellow and what's

4  blue.  Were those the two colors that were -- that you used?

5          MS. CORDES:  I'll give you an additional copy, Your

6  Honor.

7          THE COURT:  I was going to ask.  And you don't have to

8  leave that here today, but.

9          MS. CORDES:  I can though.

10         THE COURT:  Or you can send it up.  But at some point, I

11 will need it.

12         MS. CORDES:  Here's a copy.  It would depend on what

13 printer, but we what used, it appears yellow, blue or gray.  So,

14 hopefully, that's a little bit better.

15         THE COURT:  Okay.

16         MS. CORDES:  Is that a bit more clear to you?

17         THE COURT:  Yeah, because what I have is just -- what I

18 have right now is just this.

19         MS. CORDES:  It's gray.

20         THE COURT:  Everything is gray, yeah.

21         MS. CORDES:  Okay.  Your Honor, Mr. Sandage notes that

22 the federal -- our district, the Eighth Circuit federal cases

23 rarely is severance granted.  And I believe the reason for that

24 is because the case law is very clear on this issue, not only

25 from the Supreme Court but as applied in the Eighth Circuit.  And

1 I'm going to go through, hopefully in the order that Mr. Sandage

2 just made his arguments, and I believe these coincide with what's

3 been already argued in the pleadings. But just to highlight a

4 few of those. The purpose of the non-hearsay argument in the

5 pleading is as follows: *Bruton,* as you know, is a Sixth

6 Amendment confrontation clause issue. The Sixth Amendment

7 confrontation clause is not triggered unless evidence is being

8 offered for the truth of the matter asserted, and it's

9 implicating the defendant. The cases cited in the Government's

10 pleading are post-*Crawford*, and they were specifically chosen for

11 that reason because we are dealing with a confrontation clause

12 issue. The colors yellow and blue indicate two different things,

13 as you noted in the 302s. In the blue sections of the 302 are

14 what the Government believes are statements and evidence being

15 offered for non-hearsay purposes; statements that indicate the

16 state of the mind, state of mind of the person and subsequent

17 conduct of Ms. Palmer. And so, they're not being offered for the

18 truth of the matter asserted. Statements about Barkau are not

19 being offered for that purpose. And so, the confrontation

20 clause, the Sixth Amendment issue is not even triggered. *Bruton*

21 isn't triggered. There are other statements throughout the 302s,

22 they don't implicate Todd Barkau at all. They discuss things

23 that Ms. Palmer did, saw, said, and Todd Barkau isn't even

24 mentioned. So, certainly, we don't have a *Bruton* issue with

25 those as well.

1          THE COURT:  And that's the yellow?

2          MS. CORDES:  Yes, the yellow, correct.

3          THE COURT:  Is what you say doesn't implicate him?

4          MS. CORDES:  Well, that's actually a combination.  The

5    yellow indicates statements that do not implicate Barkau, and

6    they also indicate statements that we believe they could be

7    properly redacted and combined with limiting instructions to the

8    jury can be used.

9          THE COURT:  Okay.

10         MS. CORDES:  Now, that being said, Your Honor --

11         THE COURT:  Yeah, well, let me back up and make sure.

12   Because I thought originally, I read your motion or response to

13   say that the yellow just didn't implicate him.  But you're saying

14   it either implicates him or it can be redacted?

15         MS. CORDES:  Right.  In the 302s that I attached to that

16   pleading, if it hasn't been redacted in any way, we're arguing

17   that it doesn't implicate him, such as the first paragraph --

18         THE COURT:  Right.  Okay.

19         MS. CORDES:  -- background information about Debra

20   Palmer.  But I think I -- well, let me go on to say this.  The

21   remaining statements that we have in there, which do implicate

22   Todd Barkau, which, as you said, are also included in the yellow,

23   there's a simple remedy for it.  It's the same remedy that's

24   always been used, and that's provide a limiting instruction to

25   the jury combined with a redaction in those particular sections.

1      THE COURT:  And let me just ask this then.  If there's a

2  paragraph where, say, the first sentence is just, say, there's

3  two sentences, and only one of the sentences is in yellow, is the

4  yellow the one that you intend to read?  Is that your proposed

5  redaction?

6      MS. CORDES:  Yes, the Government was willing to set

7  aside the ones that are not highlighted at all.

8      THE COURT:  Okay.  So, on this that you just gave me,

9  like anywhere on this page where it's -- there's nothing there,

10 you don't intend to read that into evidence?

11     MS. CORDES:  That's right, Your Honor.

12     THE COURT:  Okay.

13     MS. CORDES:  And I hope that that is also an indication

14 that we're trying to reasonable in how we're using this

15 statement.  There's a lot of incriminating statements against

16 both of the defendants in that, and we're willing to set those

17 aside and only use the sections highlighted in those two areas.

18 If we redact it, and I think it can be even redacted more in a

19 couple of places, we don't even have to have a male pronoun in

20 there.  Another person or someone can always be used, another

21 individual, something that's benign for both sex and doesn't

22 include the defendant's name at all.  And Mr. Sandage's arguments

23 that, well, it's going to be obvious as to who they're talking

24 about because Debra Palmer is the mother of the victim, well,

25 first of all, let me say a contextual implication is something,

1  as you well know, that we cannot take into account.  If there's
2  other incriminating evidence at trial, that's not what we're
3  evaluating.  The evaluation is based on the four corners of the
4  statement, the testimony that will come in from the agent
5  regarding that statement.  And we can't decide whether it's going
6  to be incriminating as linked to other evidence.  That's been
7  well established in the cases cited by the Government and the
8  cases cited by the defendant, including *Richardson vs. Marsh*,
9  *United States vs. Garcia*, a Supreme Court case and Eighth Circuit
10 case respectively.  And *Richardson* very specifically said as long
11 as the facially incriminating reference the defendant is removed
12 -- and we're talking about, you know, non-hearsay issues set
13 aside, the statements that don't implicate Barkau set aside, but
14 the ones that do implicate Barkau that are being offered for the
15 truth in the matter asserted, if we make them benign and we
16 remove any facially incriminating reference to Todd Barkau,
17 combine that with a limiting instruction, and it's sufficient to
18 allow this testimony to come in.  And the suggestion that I just
19 made about someone, another person, that language was
20 specifically upheld in the *United States vs. Garcia* Eighth
21 Circuit case.  It was affirmed by the Supreme Court in *Gray vs.*
22 *Maryland*, also cases cited by the defendant as well.  So, I do
23 believe that we have a very sufficient remedy without severing
24 the case here.  And, you know, --

25          THE COURT:  Can I ask you something?  I'm just -- I'm

1  looking at page 5, the paragraph in yellow, where it talks about

2  Barkau, and you have it in yellow.  You haven't put his name in

3  yellow, but, so I assume you will be saying he, "He ran the www.

4  evilmistressalicia.com website."

5          MS. CORDES:  Or another person ran.

6          THE COURT:  Okay.  But are you going to have in other

7  evidence at trial as to who was running that website?

8          MS. CORDES:  There would be, yes, there would be other

9  evidence coming in from other witnesses about how the website

10 functioned and operated such as the victim.

11         THE COURT:  And who ran it?

12         MS. CORDES:  Yes, and the victim would be testifying

13 that the defendant ran that website.

14         THE COURT:  That Mr. Barkau ran it.

15         MS. CORDES:  That's right.

16         THE COURT:  So, even if you put "he" in there, then

17 combined with that other evidence, isn't it clear that we're

18 talking about Mr. Barkau?

19         MS. CORDES:  And that's what I -- I think we have to set

20 that analysis completely aside.  I think that's what's clear in

21 *Richardson vs. Marsh,* the *Garcia* case in the Eighth Circuit, the

22 Supreme Court has said that contextual implication, looking at

23 this statement combined with other evidence coming in is not the

24 analysis that's supposed to be taken.  We're very specifically

25 supposed to be look to this statement as it is, this testimony as

1  it comes in and evaluate it on the four corners of the testimony.

2  If there's other evidence that comes in at trial, other testimony

3  that comes in at trial, there is or there isn't.  That's

4  something that's separate.  And this statement has to be

5  evaluated on its own basis.  Also want to throw in, as I was

6  preparing for this this morning, Your Honor, I'm happy -- the

7  Government is happy to amend what we originally argued in the

8  pleading and actually combine the redactions throughout all of

9  the non-hearsay sections as well.  As you'll see, I originally

10 argued that this non-hearsay should come in as it is.  The

11 highlighted sections should be redacted or either they don't

12 implicate Barkau.  I'm happy to go ahead and redact the blue or

13 the non-hearsay sections as well in an abundance of caution.

14 While I believe that comes in under a separate basis on a non-

15 hearsay basis, and because it's non-hearsay being used to show

16 state of mine, subsequent conduct, it doesn't trigger the Sixth

17 Amendment confrontation clause, in an abundance of caution, I

18 believe that we can go ahead and redact that too, and I'm happy

19 to propose an amended Attachment "A" and "B" with those

20 redactions as well.

21         THE COURT:  Well, I think you should file that if

22 there's something else you're proposing because the Court intends

23 to, you know, rule this pleading on the basis of -- I know

24 different judges have different views.  It's not my view that

25 it's my role to really make your redactions.

1          MS. CORDES:  Uh-huh.

2          THE COURT:  You say here's what we redact, and it meets

3    the case law standard.  So, if you're proposing a different

4    redaction, then I need to know that.

5          MS. CORDES:  And again for the record, I do believe

6    those blue sections come in for non-hearsay purposes.  But I

7    will.  I'll file an amended attachment, and I'll offer you that.

8    I can do it by the end of the day or tomorrow, Your Honor.

9          THE COURT:  But then are you saying at trial you'd be,

10   if the case isn't severed, you'd be committed using your second

11   set of redactions or?

12         MS. CORDES:  Yes, Your Honor.

13         THE COURT:  Okay.

14         MS. CORDES:  Yes.  And again, just to do that in an

15   abundance of caution to make sure that there are no issues.  I

16   would hate for there -- I think that also part of this is going

17   to depend on how the testimony comes in.  You know, part of it is

18   a trial issue depending on what's actually testified to and how

19   it comes in.  But absolutely, I'm willing to commit to a full

20   redaction of both statements for the highlighted -- yellow

21   highlighted and blue non-hearsay and other evidence included in

22   there.  Any additional questions?  Nothing further, Your Honor.

23         THE COURT:  Anything?

24         MR. SANDAGE:  Your Honor, it might be a point of

25   clarification.  As we move forward, is it my understanding from

1  the Government and maybe you understand it, Judge, that the blue

2  highlighted paragraphs will now be redacted because I would like

3  to be heard a little bit longer on this issue of whether or not

4  it's considered hearsay.  I mean, because it is hearsay.  And I

5  don't think subsection (c) of her argument applies in this case.

6  And I think in her argument she stated to you, Judge, that they

7  specifically picked cases -- the Government picked cases beyond

8  *Crawford*.  Well, subsection (c) are all like 1980 cases.  So,

9  that's not, in fact, true as it relates to subsection (c) of her

10 argument regarding non-hearsay.  The non-hearsay argument simply

11 does not apply in this case.  Your Honor, looking at the

12 Attachment "A," page 5, right where you were at, the blue

13 highlighted says, "Barkau was controlling and mentally abusive."

14 That's just the first line.  I have no idea how that can -- that

15 that's nothing more than hearsay evidence.  That's Defendant

16 Palmer making a statement about Barkau.  I don't think it goes

17 anything to the state of mind about why she might or might not

18 have committed criminal conduct or anything like that.  It's

19 strictly hearsay.  It falls within the context of *Bruton*.  And he

20 could be *Bruton*ized and protected and even then, I don't think it

21 can be cured.  And I think that's the reason for severance.  So,

22 we could play with that sentence all day to try to come up with a

23 way that the Government could *Bruton*ize that where everybody in

24 the room wouldn't know that they were talking -- that Defendant

25 Palmer was talking about Mr. Barkau.

1    THE COURT:  Since we're focused on that, just as an

2    example, you're of the position that that is being offered for

3    the truth of the matters asserted.  What's your argument on

4    behalf of the Government then, as to why that really is a non-

5    hearsay statement?

6    MS. CORDES:  This particular paragraph that's been

7    singled out, the Government isn't trying to prove up at trial

8    whether Barkau was controlling and mentally abusive to Debra

9    Palmer.  Debra Palmer is -- she makes a lot of self-serving

10   statements throughout this, as well as making incriminating

11   statements, implicating herself.  She minimizes it by saying he

12   treated me this way, therefore, I did this.  We're not going to

13   be arguing to the jury about the conduct Todd Barkau engaged in

14   with Debra Palmer.  The reason why it's being used is to show her

15   state of mind at the time, why she did what she did and her

16   subsequent conduct, why she went along with the instructions and

17   complied how he was running the household.

18   MR. SANDAGE:  I don't know what to say, Your Honor.  I

19   just, I believe that the -- I've never seen this argument made in

20   the context of a co-defendant case.  I just think that the legal

21   analysis is flawed and misplaced.  The three cases that the

22   Government cites in support of them, as the Court will read and

23   look at, are somewhat taken out of context as it applies to this

24   case.  And I can go into that in more detail.  I kind of already

25   hit on why I think the Government's first case, the Supreme Court

1  case, *Tennessee* was already misplaced.  I mean, even in that same

2  paragraph, you know, it says, "Barkau also determined what bills

3  were to be paid."  I mean, how does that in any way go to the

4  state of mind of Defendant -- of Co-defendant Palmer.

5        THE COURT:  Well, let me ask this to the Government.  I

6  mean, when you say you want to -- this paragraph would show, you

7  know, why she took the actions that she did.  I mean, isn't that

8  really her defense.  I mean, why would the Government be offering

9  that?

10       MS. CORDES:  The Government -- she says those things in

11 conjunction with the rest of her statement as to I did this and

12 this is the reason why I did this.  And so, it's self-serving to

13 her, but she's implicating herself in the course of making those

14 statements.  But I think it's also worth noting that this

15 hearsay/non-hearsay issue is just kind of an extra reason why

16 this evidence comes in.  This isn't what the Government is

17 hanging its hat on.  I've already agreed to offer an amended

18 redacted Attachment "A" and "B."  And with those redactions,

19 hearsay, not hearsay, this evidence should come in, you know,

20 with a redacted testimony and with a limiting instruction to the

21 jury.  So, that's the main focus.  I don't want this to be a

22 distraction.  The purpose of distinguishing it is that this is

23 non-hearsay evidence.  It has a legal basis to be coming in.

24 Confrontation clause isn't even triggered.  But in an abundance

25 of caution, because it is in the context of the rest of her

1  statement, we can redact it all, put in benign, neutral words,

2  such as "another person," and then we have the whole statement

3  covered.

4      THE COURT:  Well, when we get those additional

5  redactions, I mean, if there's anything anybody wants to add in

6  writing, you know, just let us know, and we'll defer ruling it

7  until we get something from you.

8      MR. SANDAGE:  All right.  Thank you, Judge.

9      THE COURT:  All right.  Anything else on the severance

10 issue?

11     MS. CORDES:  No, Your Honor.  Thank you.

12     MR. SANDAGE:  No, Your Honor.

13     THE COURT:  Let me ask this question.  I haven't had a

14 chance to fully read the pleadings.  But there was a Motion to

15 Compel Production, and I gather the Government was saying that

16 you really didn't even oppose that motion.

17     MS. CORDES:  Right.  We expected a reasonable request,

18 but we're not in opposition in general.

19     THE COURT:  Well, where are we?  What is it you are

20 seeking to compel and is it worked out or where do we stand with

21 respect to that?

22     MR. SANDAGE:  The Government has made efforts.  They've

23 recently turned over a more finite amount of discovery as related

24 to their recovery of 16 CDs from my client at the time of his

25 arrest in New York.  I've started to go through that process.

1  Judge, quite honestly, it's just a huge, it's a -- I went through

2  part of it.  I mean, I've been through two and a half hours of

3  it.  I still believe that quite of bit of that digital media that

4  I reviewed would not require the efforts of me or my staff to go

5  down to the U.S. Attorney's Office because I don't know if it

6  falls within the confines of child pornography that we couldn't

7  have at our office to be able to review to make a decision.  I

8  will first want the Court to know I kind of jumped onto that

9  motion.  The motion we're talking about is more a genesis of

10  Defendant Palmer's attorney, and we had discussions.  You know, I

11  think what Mr. Moss and I were talking about in filing this

12  motion was we have hundreds -- as you know from our motion to

13  continue that we have --

14          THE COURT:  Right.

15          MR. SANDAGE:  -- hundreds of hours, if not thousands.  I

16  don't even know if you were to sit down and do it all.  I'm

17  trying to get through it.  It's almost impossible to do it -- or

18  a near impossible task.  And we were just trying to work with the

19  Government to try to -- now that we're inside four months to

20  trial, that maybe the Government has a better idea of what

21  exhibits they might be going to call into evidence at trial.  And

22  then we could maybe just focus on that.  I mean, I realize it's

23  not the Government's burden to do our job, but in an abundance of

24  caution, because I can see it being somewhat of a logistic

25  nightmare at trial because we have foundation issues as it

1  relates to each piece of digital media and things like that. So,

2  they are making an effort. So, I will tell you that it's a work

3  in progress, Judge, to answer your question.

4      THE COURT: Well, is it something that the Court should

5  defer for a while and then, you know, in a month get back with

6  the parties, either by phone or in person here, to talk about

7  where you are with respect to the discovery?

8      MR. SANDAGE: I think that that's probably a fair thing

9  to do, Judge. And I can -- maybe Mr. Moss and Ms. Cordes --

10     THE COURT: Well, maybe have everybody and just have

11 more of a status conference if we've got that much discovery to

12 make sure we're on track for the trial date.

13     MR. SANDAGE: Sure. I'll confer with Mr. Moss and let

14 him know that you brought this issue up and --

15     THE COURT: Okay.

16     MR. SANDAGE: -- and then maybe the three -- I haven't

17 really talked to him since this recent -- this review of

18 discovery that I've done.

19     THE COURT: Okay. Well, I think -- and even if you get

20 that worked out, I think you can anticipate just, given what I'm

21 hearing, that in probably 30 days, we'll just -- we'll have a

22 status conference to see where the parties are.

23     MR. SANDAGE: That's good. Thank you.

24     THE COURT: All right. We'll wait then to get your

25 additional redactions. And if you can just -- I know you're

1  filing everything under seal.  Just do a filing under seal is

2  fine.  And then let us know if you're going to respond to that or

3  if the briefing is complete.

4          MR. SANDAGE:  All right.  Thank you, Judge.

5          THE COURT:  All right.  We'll be in recess.

6              (Court Adjourned at 1:58 p.m.)

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.


/s/ Lissa C. Whittaker        February 13, 2009
Signature of transcriber            Date